UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER MILLER, SCOTT POOLE, and KEVIN ENGLUND, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 18 C 86 Hon. Marvin E. Aspen |
| SOUTHWEST AIRLINES CO., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs Jennifer Miller, Scott Poole, and Kevin Englund filed this lawsuit against Defendant Southwest Airlines Co. on behalf of themselves and a putative class of similarly situated individuals. Plaintiffs assert a claim for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, as well as various common law claims. (Am. Compl. (Dkt. No. 22).) Presently before us is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (Dkt. No. 27.) For the reasons set forth below, we grant Defendant's motion to dismiss for improper venue pursuant to Rule 12(b)(3).

## BACKGROUND

Plaintiffs have worked as ramp agents and operations agents for Defendant at Chicago Midway International Airport ("Midway") since at least 2005. (Am. Compl. ¶¶ 6–9.) All ramp and operations agents at Midway are represented for purposes of collective bargaining by the Transportation Workers Union of America, AFL-CIO Local 555 ("TWU 555"). (Jordan Decl. (Dkt. No. 28–1) ¶ 6.) Defendant and TWU 555 have entered into successive collective bargaining agreements ("CBAs") during the period of Plaintiffs' employment. (*Id.* ¶ 7.)

In 2006, Defendant implemented a biometric timekeeping system at Midway. (*Id.* ¶ 9; Am. Compl. ¶ 26.) The timekeeping system requires employees to scan their fingers to sign in and out of work every day and "captures, collects, stores, and uses" the finger scans "to identify [employees] in the future for timekeeping and payroll purposes." (Am. Compl. ¶ 26.) Plaintiffs allege Defendant (1) did not provide notice to employees regarding the biometric timekeeping program; (2) did not obtain written informed consent from the employees who are required to use the biometric timekeeping program; and (3) failed to publish data retention and deletion policies for its employees. (*Id.* ¶¶ 29, 55–56.) Plaintiffs further allege that "[t]o the extent Defendant utilizes out of state vendors to operate its biometrics program" in conformance with industry practice, Defendant failed to obtain consent for any transmission to third parties of Plaintiffs' biometric information. (*Id.* ¶ 57.) Likewise, Plaintiff asserts Defendant does not have a policy of informing workers as to how it uses their biometric information; whether the information is transmitted to third parties (and if so, which third parties); or what happens to the data when the worker's employment terminates, a facility closes, or if Defendant was to be acquired, sold, or file for bankruptcy. (*Id.* ¶ 59.)

Plaintiffs contend Defendant violated their substantive privacy rights under BIPA when it required them to scan their fingerprint, "a distinctive identifier [that] constitutes a biometric identifier and biometric information under BIPA." (*Id.* ¶¶ 28, 61–62.) They assert that the violations have resulted in monetary damages, because if they had received BIPA-compliant notice, they would not have agreed to work for Defendant without additional compensation. (*Id.* ¶ 60.) They further contend they have not been sufficiently compensated by Defendant for the capture, collection, storage, retention, and use of their biometric information. (*Id.*)

On November 27, 2017, Plaintiffs filed a class action lawsuit in the Circuit Court of Cook County, asserting a single claim for violation of their substantive privacy rights under BIPA. (Notice of Removal (Dkt. No. 1) ¶ 1.) Defendant removed the lawsuit to federal court on January 5, 2018 pursuant to 28 U.S.C. §§ 1331, 1332(a), 1332(d), 1441, and 1446, asserting federal subject matter jurisdiction existed based on diversity, the Class Action Fairness Act of 2005 ("CAFA"), and the Railway Labor Act, 45 U.S.C. § 181, *et seq.* ("RLA"). Plaintiffs filed an amended complaint on April 2, 2018, asserting class claims for: violation of BIPA (Count I); intrusion upon seclusion (Count II); conversion (Count III); negligence (Count IV); and fraud (Count V). (Am. Compl. ¶¶ 72–104.) In addition, Plaintiffs assert alternative class claims for breach of contract (Count VI) and breach of contract implied in law (Count VI). (*Id.* ¶¶ 105–114.) On behalf of the putative class, Plaintiffs seek an injunction requiring Defendant to destroy the class members' biometric data; to "cease all unlawful activity related to the capture, collection, storage, and use of their and other class member's biometrics"; statutory damages; costs; and reasonable attorneys' fees. (*Id.* ¶ 63.)

Defendant filed a motion to dismiss all counts in Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6) for improper venue and failure to state a claim. (Dkt. No. 27.) Defendant argues Plaintiffs' BIPA claim should be dismissed because Plaintiffs have not alleged an injury sufficient to make them "person[s] aggrieved" under BIPA. (Mem. in Support of Mot. to Dismiss ("Mem.") (Dkt. No. 28) at 6–12.) Defendant also contends Plaintiffs have failed to state a claim for any of their common law causes of action under Illinois law. (*Id.* at 15–25.) Additionally, Defendants argue all of Plaintiffs' claims are preempted by the RLA, and Plaintiffs' complaint must therefore be dismissed for improper venue. (*Id.* at 13–17, 19–20, 22, 25.)

## ANALYSIS

**I.     ARTICLE III STANDING**

Defendant argues Plaintiffs have not pled they are "aggrieved" under BIPA as they have not alleged any cognizable injury, and therefore, they are not entitled to a private right of action under the statute. (Mem. at 6–12.) The Illinois legislature passed BIPA in 2008 "in response to concerns about the growing use of biometric identifiers and information in financial transactions and security screening procedures." *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17 C 8033, 2018 WL 2445292, at \*8 (N.D. Ill. May 31, 2018) (citing 740 ILCS 14/5). BIPA "regulat[es] the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information" and provides a private right of action to "[a]ny person aggrieved by a violation." *Aguilar v. Rexnord LLC*, No. 17 C 9019, 2018 WL 3239715, at \*1 (N.D. Ill. July 3, 2018) (citing 740 ILCS 14/5(g); 740 ILCS 14/20).

Despite arguing Plaintiffs have not alleged an actual injury, as the party removing this action to federal court, Defendant predictably does not take the position that Plaintiffs have failed to meet the injury-in-fact requirement for Article III standing, a finding that would require remand to state court pursuant to 28 U.S.C. § 1447(c). (Reply (Dkt. No. 34) at 2.) *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) (citing *McIntyre v. Fallahay*, 766 F.2d 1078, 1082 (7th Cir. 1985) (explaining "[i]f the case did not belong in federal court at all, it should be remanded rather than dismissed" under § 1447(c)); *Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Human Res.*, 876 F.2d 1051, 1053–54 (1st Cir. 1989) (concluding § 1447(c) requires district court to remand, not dismiss, for lack of standing)). Similarly, Plaintiffs have not requested a remand to state court based on lack of standing, instead characterizing Defendant's no-injury argument as "a sham" and contending Plaintiffs have alleged a concrete injury sufficient to escape dismissal. (Resp. at 1.)

However, "[r]egardless of whether the defendant[] intended to cast doubt on [the plaintiffs'] Article III standing," as a court of limited jurisdiction, we must independently ensure we have subject matter jurisdiction, including that there is an actual case or controversy before us pursuant to Article III of the United States Constitution. *Dixon*, 2018 WL 2445292, at *8 (collecting cases examining whether a plaintiff is "aggrieved" under BIPA and also addressing standing issues); *see also Aguilar*, 2018 WL 3239715, at *2 (concluding the court has "an independent obligation to ensure subject-matter jurisdiction exists, even if no party raises the issue, and standing is an important component of subject-matter jurisdiction" (citing *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013)). Accordingly, we first address whether Plaintiffs have standing such that we have jurisdiction over their claims. *Collier*, 889 F.3d at 896.

As the party invoking federal jurisdiction, Defendant bears the burden of establishing federal jurisdiction existed at the time of removal. *Id.* (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992)); *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017) ("As the party seeking removal, [the defendant] bears the burden of establishing federal jurisdiction."). Plaintiffs have Article III standing to sue if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136). A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549; *see also Collier*, 889 F.3d at 896 (stating the plaintiff must have "suffered an injury beyond a statutory violation").

A violation of BIPA's notice and consent provisions does not create a concrete risk of harm to a plaintiff's right of privacy in his or her biometric data unless the information is collected or disseminated without the plaintiff's knowledge or consent. *See Aguilar*, 2018 WL 3239715, at *3 ("A person's privacy may be invaded if her biometric information is obtained or disclosed without her consent or knowledge."). Thus, disclosure to a third party of information in which a person has a right of privacy constitutes "a sufficiently concrete injury for standing purposes" where the information is disclosed without the person's knowledge or consent. *Dixon*, 2018 WL 2445292, at *10 (concluding that the "alleged violation of the right to privacy in and control over one's biometric data, despite being an intangible injury, is sufficiently concrete to constitute an injury in fact that supports Article III standing" where plaintiff alleged defendant disclosed her fingerprint scan to a third party without informing her or obtaining consent); *cf. Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017) (finding a technical statutory violation insufficient to satisfy Article III standing in the absence of any allegation that defendant "has ever given away or leaked or lost any of his personal information or intends to give it away or is at risk of having the information stolen from it"); *Goings v. UGN, Inc.*, No. 17 C 9340, 2018 WL 2966970, at *4 (N.D. Ill. June 13, 2018) (granting motion to dismiss for lack of Article III standing, finding the alleged violation of BIPA notice and consent provisions insufficient to support federal jurisdiction absent allegations that defendants disclosed, purposefully or unwittingly, the information to any other entity without his consent); *Howe v. Speedway*, No. 17 C 7303, 2018 WL 2445541 (N.D. Ill. May 31, 2018)

(same); *McCollough v. Smarte Carte, Inc.,* No. 16 C 3777, 2016 WL 4077108, at *3–4 (N.D. Ill. Aug. 1, 2016) (same).

Here, Plaintiffs have alleged violations of BIPA's notice and consent provisions, but they have also alleged that Defendant disseminated their biometrics to unknown third parties, "such as payroll vendors or timekeeping vendors, without knowledge or consent." (Am. Compl. ¶¶ 57, 84, 92, 96, 99–102, 108.) We find that like *Dixon*, even if Plaintiffs voluntarily scanned their fingerprints to the biometric time clock Defendant required them to use, they still have alleged a concrete injury because there is no indication on the face of the complaint that they knew about or consented to the disclosure of their fingerprint scans to third parties. *Dixon*, 2018 WL 2445292, at *10. Because the alleged violation of Plaintiffs' right to privacy in their biometric data is a sufficiently concrete injury for Article III standing, we are satisfied have subject matter jurisdiction over this case and need not remand it to state court. *Id.*

## II. RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE

Defendant also argues Plaintiffs' claims should be dismissed for lack of proper venue under Federal Rule of Civil Procedure 12(b)(3). (Mem. at 1–2, 13–14.) Defendants contend Plaintiffs' claims are subject to mandatory arbitration or collective bargaining negotiations under the relevant CBAs and the RLA, and therefore, this Court is an improper venue. (*Id.*) Because we agree the RLA preempts Plaintiffs' claims, we grant Defendant's motion to dismiss on this basis.

### A. Legal Standard

Rule 12(b)(3) permits dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). A motion to dismiss "based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) (quoting *Auto. Mechs. Local 701*

7

*Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)); *Everette v. Union Pac. R.R.*, No. 04 C 5428, 2006 WL 2587927, at *3 (N.D. Ill. Sept. 5, 2006) ("Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate."). "On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that the venue it has chosen is proper." *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006). In determining whether venue is proper, a court is "not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *see also Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998) (stating a court may examine facts outside the complaint in ruling on a motion to dismiss under Rule 12(b)(3)). In evaluating a motion to dismiss for improper venue, we view the allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true, unless they are contradicted by the defendant's affidavits. *Nagel*, 995 F. Supp. at 843.; *Rotec*, 436 F. Supp. 2d at 933.

  **B.**   **RLA Preemption**

The RLA governs collective bargaining agreements in the railroad and airline industries. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248, 114 S. Ct. 2239, 2241 (1994); *see also Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 314 (7th Cir. 2002). "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines*, 512 U.S. at 252, 114 S. Ct. at 2243. The RLA "is designed to substitute bargaining, mediation, and arbitration for strikes"; therefore, "[e]mbedded in the Act is a strong preference for arbitration, as opposed to judicial resolution of

disputes." *Bhd. of Locomotive Eng'rs & Trainmen (Gen. Comm. of Adjustment, Cent. Region) v. Union Pac. R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017).

Pursuant to this goal, the RLA establishes "a mandatory arbitral mechanism for 'the prompt and orderly settlement'" of two classes of disputes: major and minor disputes. *Hawaiian Airlines*, 512 U.S. at 252, 114 S. Ct. at 2243–44 (quoting 45 U.S.C. § 151a). Major disputes arise over the formation or amendment of a collective bargaining agreement and concern rates of pay, rules, or working conditions. *Id.*; *Bhd. of Locomotive Eng'rs*, 879 F.3d at 755–56. Minor disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Hawaiian Airlines*, 512 U.S. at 252–53, 114 S. Ct. at 2244 (citation and alteration omitted). "The key difference is that major disputes relate to disagreement over the creation of new contractual rights, while minor disputes concern the enforcement of existing ones." *Ill. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps., Div. of Int'l Bhd. of Teamsters*, 79 F. Supp. 3d 846, 850 (N.D. Ill. 2015) (explaining that if the parties' disagreement may be conclusively resolved by interpreting the existing agreement, it is a minor dispute). Minor disputes must be submitted to binding arbitration and major disputes "are settled through the lengthy bargaining process outlined by the RLA, after which, if no agreement has been reached, 'the parties may resort to the use of economic force.'" *Id.* (quoting *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303, 109 S. Ct. 2477, 2480 (1989)); *see also Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001) ("All minor disputes must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." (quotations omitted)).

9

Defendant contends the CBAs contain several provisions that are central to Plaintiffs' claims, and pursuant to the CBAs and the RLA, the claims must therefore be addressed exclusively through arbitration, or alternatively, collective bargaining. (Mem. at 3.) Defendant primarily argues that all of Plaintiffs' state-law claims constitute "minor" disputes as they are dependent on an interpretation of the CBAs governing Plaintiffs' conditions of employment. (*Id.* at 13, 15–16, 17–18, 19–20, 22, 24–25.) In the alternative, Defendant argues Plaintiffs' claims constitute "major" disputes under the RLA because they attempt to alter the working conditions governed by the CBAs—changes that can only be initiated and negotiated by the union. (*Id.* at 14.)

To succeed on its theory that Plaintiffs' claims raise "minor" disputes under the RLA and are therefore subject to mandatory and exclusive arbitration, Defendant may show that the resolution of Plaintiffs' claims requires interpretation of the CBAs. *Johnson v. United Air Lines, Inc.*, No. 17 C 8858, 2018 WL 3636556, at *2 (N.D. Ill. July 31, 2018) (citing *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583 (7th Cir. 1999)). Here, we agree with Defendant that Plaintiffs' claims are minor disputes preempted by the RLA because the claims require interpretation of the CBAs negotiated by Defendant and TWU 555 governing Plaintiffs' terms of employment. *Johnson*, 2018 WL 3636556, at *2 (granting motion to dismiss and finding the RLA preempted BIPA claims related to airline's implementation and use of a biometric timekeeping system, finding "whether the use of fingerprint technology for timekeeping purposes violates BIPA inherently requires interpretation of the permissible scope of use within the CBA entered into" between the plaintiffs' union and the airline); *see also Brown*, 254 F.3d at 658 ("[E]ven if [plaintiff]'s claim is grounded upon rights which stem from some source other than the CBA (such as state law), the claim will be preempted if it cannot be

10

adjudicated without interpreting the CBA, or if it can be conclusively resolved by interpreting the CBA." (internal quotations omitted)).

First, with respect to their BIPA claim, Plaintiffs assert compensation-related injuries as a result of Defendant's implementation and use of the biometric timekeeping system, alleging that given the "invasive nature" of the finger scans and the risks associated with providing and storing biometric information, Defendant did not "sufficiently compensate[]" Plaintiffs for the "capture, collection, storage, retention, and/or use of their biometric information." (Am. Compl. ¶ 60.) Plaintiffs further allege they "would not have agreed to work for Defendant, at least not for the compensation they received, had they been informed pursuant to BIPA of the nature of Defendant's biometric timekeeping system." (*Id.*) Among the relief Plaintiffs seek is compensation for the commercial value of their biometric information. (*Id.* at PageID #:235.)

Because the CBAs govern the rates of pay, rules, and working conditions of Plaintiffs' employment, Plaintiffs' BIPA claim "requires interpretation of the CBA to determine whether [Defendant] has the authority to use a particular timekeeping system for employees." *Johnson*, 2018 WL 3636556, at *2. Specifically, the CBAs dictate employees' wage rules, rates of pay, and bonuses. (*See* CBA, Jordan Decl. Ex. A (Dkt. No. 28–1) at Art. 28.) Defendant and TWU 555 negotiated the wage scales applicable to Plaintiffs, as well as other pay provisions relating to premium pay. (Jordan Decl. (Dkt. No. 28–1) ¶ 8.) Additionally, under the terms of the CBAs, TWU 555 is the "sole and exclusive bargaining agent" for all of Defendant's United States-based ramp, operations, provisioning, and freight agents including Plaintiffs, and Defendant broadly retains the "right to manage and direct the work force" subject to the labor agreements. (*Id.*; *see also* CBA at Art. 2(A).) The CBAs further establish a grievance system and arbitration procedure to resolve disputes concerning the interpretation or application of the

11

agreements as required by the RLA. (CBA at Art. 20.) Plaintiffs' BIPA claim cannot be resolved without interpreting the wage provisions of the CBAs and the relevant bargaining history to determine whether the wages TWU 555 and Defendant negotiated were intended to compensate employees for all conditions of their employment, including use of the biometric timekeeping system. Likewise, Plaintiffs' challenge to Defendant's decision to implement the biometric timekeeping system requires an interpretation as to whether the decision falls within the scope of Defendant's right to "manage and direct the work force." *See Johnson*, 2018 WL 3636556, at *2.

Defendant similarly argues Counts II through VII for intrusion upon seclusion, conversion, negligence, fraud, and breach of contract must be dismissed pursuant to Rule 12(b)(3) because the claims also constitute minor disputes that are preempted by the RLA. (Mem. at 13–17, 19–20, 22, 25.) As with the BIPA claim, to decide each of Plaintiffs' common law claims, we need to interpret the scope of the union's authority as the "sole and exclusive bargaining agent" to consent to the implementation and use of timekeeping system on Plaintiffs' behalf. Such a determination necessarily requires an interpretation of the governing CBAs and consideration of the parties' bargaining history with respect to working conditions. Resolving Plaintiffs' claims also necessitates a determination as to whether Defendant's actions conformed to the rights and duties created under the CBAs and whether it acted within its authority under the negotiated terms of the CBAs in implementing the timekeeping system.

Moreover, the CBAs provide that covered employees "shall be governed by all reasonable Company rules and regulations previously or hereafter issued by proper authority of the Company which are not in conflict with the terms and conditions of this Agreement . . . ." (CBA at Art. 2(C).) Insofar as Defendant decided to implement the biometric timekeeping

system, resolution of Plaintiffs' claims requires determining whether such a decision is in conflict with the terms and conditions of the CBA, whether Defendant acted within its authority in doing so, and whether the decision was reasonable under the CBA. (*Id.*) Finally, Plaintiffs' challenge to the decision would also require interpretation of the CBAs' grievance process set forth in Article 22. *Johnson*, 2018 WL 3636556, at *2.

As the CBAs govern the rules and working conditions of Plaintiffs' employment, their state-law claims regarding the biometric timekeeping system all require interpretation of and reference to the CBAs' terms. *See, e.g.*, *Monroe v. Mo. Pac. R. Co.*, 115 F.3d 514, 519 (7th Cir. 1997) (finding claims for wrongful discharge were preempted by the RLA because they necessarily involved interpretation of the governing CBA); *Johnson*, 2018 WL 3636556, at *2. Accordingly, because Plaintiffs may not pursue their claims without interpreting the CBAs between Defendant and TWU 555, their claims are preempted by the RLA and must be submitted to the arbitral framework established under the RLA. *Hawaiian Airlines*, 512 U.S. at 261, 114 S. Ct. at 2248; *Johnson*, 2018 WL 3636556, at *2; *see also Bhd. of Locomotive Eng'rs*, 879 F.3d at 758 ("The burden on a railroad to convince the court that its changes are only an interpretation or application of an existing CBA is quite low. If the railroad can articulate an argument that is 'neither obviously insubstantial or frivolous, nor made in bad faith,' the court lacks jurisdiction to do anything but dismiss the case and allow arbitration to go forward." (quoting *Consolidated Rail*, 491 U.S. at 310, 109 S. Ct. at 2484)).

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for improper venue under Rule 12(b)(3) is granted, and Plaintiffs' complaint is dismissed without prejudice. *Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 456 (7th Cir. 2015) ("[A] dismissal for

improper venue is without prejudice because it is not an adjudication on the merits.");

*Farmer v. Levenson*, 79 F. App'x 918, 922 (7th Cir. 2003) ("[A] dismissal for improper venue should be without prejudice."). It is so ordered.

                                                                              _____

                                                                    Marvin E. Aspen
                                                                    United States District Judge

Dated: August 23, 2018
       Chicago, Illinois